**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 09-CR-0126-CVE |
| | ) | (11-CV-0632-CVE-TLW) |
| | ) | |
| GARRY DON SCOTT, JR., | ) | |
| | ) | |
| Defendant. | ) | |

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 10-CR-0087-CVE |
| | ) | (11-CV-0633-CVE-FHM) |
| GARRY DON SCOTT, JR., | ) | |
| | ) | |
| Defendant. | ) | |

<u>**OPINION AND ORDER**</u>

Before the Court is defendant Garry Don Scott, Jr.'s motion to vacate, set aside, or correct

sentence pursuant to 28 U.S.C. § 2255.  Dkt. # 83; 10-CR-87 Dkt. # 37.[1]  In his § 2255 motion,

defendant requests an evidentiary hearing.  <u>Id.</u> at 8.  Defendant has also filed two supplements to his

§ 2255 motion (Dkt. ## 109, 111).  Section 2255 provides that "[a] prisoner in custody under

sentence of a court established by Act of Congress claiming the right to be released upon the ground

---

[1] There are two underlying cases: 09-CR-0126-CVE and 10-CR-0087-CVE.  All citations will
be to the docket in 09-CR-0126 unless otherwise noted.  When necessary, citations to the
docket in 10-CR-0087 will be noted as 10-CR-87 Dkt. # __.  Further, for clarity, the Court
will refer to 09-CR–126-CVE as Scott I and 10-CR-0087-CVE as Scott II.  Although the
motion was filed in each case, it is one combined motion.

that the sentence was imposed in violation of the Constitution or laws of the United States . . . may move the court which imposed the sentence to vacate, set aside or correct the sentence."

## I.

On September 9, 2009, a federal grand jury returned an indictment in case number 09-CR-0126-CVE (Scott I) charging defendant with one count of felon in possession of firearms in violation of 18 U.S.C. §§ 922(g)(1) and 924(e). Dkt. # 2. Defendant was arraigned on September 23, 2009, and Assistant Federal Public Defender Stephen Greubel was appointed as counsel. Dkt. ## 7, 8.

Defendant filed an unopposed motion for continuance of the pretrial conference (Dkt. # 15), which was granted. Dkt. # 16. Subsequently, defendant and the government filed a joint motion to continue the pretrial conference and jury trial (Dkt. # 17),[2] which the Court granted as to the pretrial conference, and denied as to the jury trial. Dkt. # 19. On November 9, 2009, defendant filed proposed jury instructions, including a sealed supplemental proposed instruction regarding the defense of entrapment by estoppel. Dkt. ## 25, 26. On November 12, 2009, defendant petitioned the Court to enter a plea of guilty (Dkt. # 30), and a change of plea hearing was held on that date. Dkt. # 27. Defendant pleaded guilty pursuant to a written plea agreement (Dkt. # 31), and his plea agreement included a waiver of his appellate and post-conviction rights, including that "defendant waives the right to collaterally attack the conviction and sentence pursuant to 28 U.S.C. § 2255, except for claims based on ineffective assistance of counsel which challenge the validity of the guilty plea or this waiver." Id. at 3.

---

[2]     Numerous motions, orders, and partial transcripts were filed under seal in both 09-CR-0126-CVE and 10-CR-0087-CVE. Additionally, the government's response to defendant's § 2255 motion was filed under seal. Any references by the Court herein to the contents of sealed documents are not to the sensitive matters that formed the basis for sealing any of those documents.

At the change of plea hearing, the Court reviewed defendant's waiver of appellate and post-conviction rights:

> THE COURT: Do you understand that in your written plea agreement there is a very detailed and comprehensive waiver of appellate and post-conviction rights?
>
> THE DEFENDANT: Yes, ma'am.
>
> THE COURT: I have an obligation to review that with you on the record.
>
> Do you understand that in consideration of the promises and concessions made by the United States in your written plea agreement, you are knowingly and voluntarily agreeing to waive the right to directly appeal your conviction and sentence pursuant to 28 U.S.C. Section 1291 and/or 18 U.S.C. Section 3742(a) except that you reserve the right to appeal from a sentence which exceeds the maximum guideline range.
>
> THE DEFENDANT: Yes, ma'am.
>
> THE COURT: Do you understand that you are expressly acknowledging and agreeing that the United States reserves all rights to appeal your sentence as set forth in 18 U.S.C. Section 3742(b) and the case of United States v. Booker?
>
> THE DEFENDANT: Yes, ma'am.
>
> THE COURT: Do you understand that you are knowingly and voluntarily agreeing to waive the right to collaterally attack your conviction and sentence pursuant to 28 U.S.C. Section 2255 except for claims based on ineffective assistance of counsel which challenge the validity of your guilty plea or the waiver of appellate and post-conviction rights contained in your written plea agreement?
>
> THE DEFENDANT: Yes, ma'am.
>
> THE COURT: Do you understand that you are knowingly and voluntarily agreeing to waive the right to have your sentence modified pursuant to 18 U.S.C. Section 3582(c) except for a Rule 35(b) motion filed by the government?
>
> THE DEFENDANT: Excuse me?
>
> THE COURT: Do you understand that you're agreeing to that?
>
> THE DEFENDANT: Hold on.

Okay. Okay. Yes, ma'am. Yes, ma'am, I understand. I was worried there for a second.

THE COURT: Okay. There's a lot of law being bandied about here, but do you understand that?

THE DEFENDANT: Yes, ma'am. I understand. I'm sorry about that.

THE COURT: Okay. Do you understand that by signing this written plea agreement, you expressly acknowledge that counsel, Mr. Greubel, has explained your appellate and post-conviction rights, that you understand those rights, and that you are knowingly and voluntarily waiving those rights as set forth in your written plea agreement?

THE DEFENDANT: Yes, ma'am.

Dkt. # 92, at 12-14. The Court asked defendant, in assessing whether there was an independent factual basis for the plea of guilty, whether he understood that he was "a prohibited person, that is, [he] [was] not to possess a firearm?" Id. at 20-21. Defendant stated "I do now, ma'am." Id. The Court also asked whether defendant was "fully satisfied with the counsel, representation and advice given to [him] in this case by" Greubel, and defendant confirmed that he was. Dkt. # 92, at 5-6.

The Court accepted the guilty plea, found defendant guilty, and set sentencing for February 11, 2010. Id. at 26. The Court reminded defendant that failure to appear at sentencing on that date could result in another charge. Id. at 27. At the end of the change of plea hearing, Greubel informed the Court that he had researched the defense of entrapment by estoppel, but he found that, because no "federal agent anywhere [ ] told [defendant] he could have weapons," the defense would have failed. Dkt. # 93, at 29. The Court stated that, by the time it had heard all of the evidence, it "probably . . . would not have given that [instruction]." Id.

4

Defendant filed three unopposed motions to continue sentencing (Dkt. ## 33, 35, 37), which were granted (Dkt. ## 34, 36, 38).  Defendant thereafter filed a fourth motion to continue the sentencing (Dkt. # 39), which was denied (Dkt. # 40), and sentencing was set for April 30, 2010.

On April 30, 2010, defendant failed to appear at sentencing (Dkt. # 42), and an arrest warrant was issued for defendant.  Dkt. # 43.  On June 1, 2010, defendant was arrested.  See Dkt. # 48.  When defendant was arrested for failure to appear for sentencing on his conviction for felon in possession of a firearm, he was in possession of a firearm.[3]  See 10-CR-87 Dkt. # 15, at 2.  Sentencing in Scott I was set for June 2, 2010.  Dkt. # 44.  Defendant filed two further motions to continue sentencing (Dkt. ## 47, 55), which were granted (Dkt. ## 52, 56), and sentencing was set for August 19, 2010.

As a result of defendant's failure to appear for sentencing in Scott I, and his possession of a firearm at the time he was arrested, a grand jury returned a two-count indictment on June 9, 2010 in case number 10-CR-0087-CVE (Scott II), charging defendant with failure to appear (count one) and felon in possession of a firearm and ammunition (count two).  10-CR-87 Dkt. # 4.  Greubel filed a sealed ex parte motion to withdraw as counsel.  Dkt. # 59.  The Court granted Greubel's motion, and appointed Lance Hopkins (Hopkins) as counsel for defendant in both Scott I and Scott II.  Dkt. # 60; 10-CR-87 Dkt. # 8.  In Scott II, defendant was arraigned and ordered detained.  10-CR-87 Dkt. # 10.

---

[3]     Lance Hopkins, one of the attorneys appointed as defendant's counsel, represents that the factual background to defendant's arrest is as follows: defendant believed that he was meeting a survivalist group, which he expected to join, in a Wal-Mart parking lot.  When defendant met the group, he loaded a firearm into the group's vehicle.  At that point, federal agents arrested defendant.  Dkt. # 96-3, at 2.

Defendant petitioned the Court to enter a plea of guilty as to counts one and two of the indictment in Scott II (10-CR-87 Dkt. # 15) and pleaded guilty pursuant to a written plea agreement. 10-CR-87 Dkt. ## 13, 16.  Defendant's plea agreement again contained a waiver of appellate and post-conviction rights, which included a waiver of the "right to collaterally attack the conviction and sentence pursuant to 28 U.S.C. § 2255, except for claims based on ineffective assistance of counsel which challenge the validity of the guilty plea or this waiver."  10-CR-87 Dkt. # 16, at 3.  At the change of plea hearing, the Court reviewed his waiver of appellate and post-conviction rights.

> THE COURT: Do you also understand that under some circumstances you or the government may have a right to appeal any sentence that is imposed?
>
> THE DEFENDANT: Yes, ma'am.
>
> THE COURT: Well, do you understand that in your written plea agreement there's a very detailed - -
>
> THE DEFENDANT: Yes, ma'am.
>
> THE COURT: - - and comprehensive waiver?
>
> THE DEFENDANT: I understand that.
>
> THE COURT: Okay.  And I have an obligation to review that with you on the record.
> In paragraph 3 of your plea agreement, you agree that in consideration of the promises and concessions made by the United States in your plea agreement, you knowingly and voluntarily agree to waive the right to directly appeal your conviction and sentence pursuant to 28 U.S.C. Section 1291 and/or 18 U.S.C. Section 3742(a), except you reserve the right to appeal from a sentence which exceeds the maximum guideline range.  Do you understand that?
>
> THE DEFENDANT: Yes, ma'am.
>
> THE COURT: Do you understand that you are expressly acknowledging and agreeing that the United States reserves all rights to appeal your sentence as set forth in 18 U.S.C. Section 3742(b) and the case of United States v. Booker?
>
> THE DEFENDANT: Yes, ma'am.

THE COURT: Do you understand that you are knowingly and voluntarily agreeing to waive the right to collaterally attack your conviction and sentence pursuant to 28 U.S.C. Section 2255, except for claims based on ineffective assistance of counsel which challenge the validity of your guilty plea or your waiver of appellate and post-conviction rights contained in your written plea agreement?

THE DEFENDANT: Yes, ma'am.

THE COURT: Do you understand that you are knowingly and voluntarily agreeing to waive the right to have your sentence modified pursuant to 18 U.S.C. Section 3582(c) except for a Rule 35(b) motion filed by the government?

THE DEFENDANT: Yes, ma'am.

THE COURT: Do you understand that you are expressly acknowledging that Mr. Hopkins has explained your appellate and post-conviction rights, that you understand those rights, and that you are knowingly and voluntarily waiving those rights as set forth in your written plea agreement?

THE DEFENDANT: Yes, ma'am.

10-CR-87 Dkt. # 40, at 15-17.  Defendant also confirmed that he was "fully satisfied with the counsel, representation and advice" he received from Hopkins.  Id. at 8.  The Court reviewed the previous change of plea hearing it held in Scott I.  Id. at 23.  Defendant confirmed that he knowingly and willingly failed to appear for sentencing, despite being given a card by the court at his change of plea hearing that stated the date and time for the sentencing.  Id. at 23-24.  The Court accepted the guilty plea and found defendant guilty. The Court confirmed with defendant and the government that the sentencings in both Scott I and Scott II would be held together.  Id. at 26.  Sentencing was held on October 25, 2010.  Dkt. # 79.

The Court sentenced defendant to 262 months total: 250 months' imprisonment in Scott I and 250 months' imprisonment as to count two of Scott II, to run concurrently with each other, and 12 months as to count one in Scott II, to run consecutively to the other terms of imprisonment.  Dkt. # 79.  The Court also sentenced defendant to terms of supervised release totaling eight years: five

7

years as to Scott I and five years as to count two in Scott II, to run concurrently, and three years as to count one in Scott II, consecutive to the other terms.  Id.; Dkt. # 82; 10-CR-87 Dkt. # 36.

## II.

In defendant's § 2255 motion, he raises four claims.  Dkt. # 83.  First, defendant argues that he received ineffective assistance of counsel in pleading guilty to all charges in Scott I and Scott II. Second, defendant asserts the defense of entrapment by estoppel.  Third, defendant makes a two-pronged argument: he alleges that the Assistant United States Attorney, Janet Reincke, engaged in improper, unethical, and illegal behavior before the grand jury, which constituted prosecutorial misconduct; and, defendant argues that Hopkins' failure to raise the issue of prosecutorial misconduct on direct appeal was ineffective assistance of counsel.  Fourth, defendant argues that Reincke's alleged statements during a Rule 11 meeting rendered his guilty plea involuntary and the result of ineffective assistance of counsel, and he further alleges that privileged attorney-client information from the Rule 11 meeting was released, which violated the attorney-client privilege and his constitutional rights.

The government argues that defendant's waiver of appellate and post-conviction rights applies and bars defendant's claim that the defense of entrapment by estoppel applies to Scott I or Scott II.  As to the remainder of defendant's claims, the government argues that, pursuant to Strickland v. Washington, 466 U.S. 668 (1984), defendant's claims for ineffective assistance of counsel must fail.

The Court first notes that defendant fails to specify whether he is asserting each of the above arguments as to Scott I or Scott II; however, it is clear that none of defendant's arguments relates to his guilty plea to failure to appear (count one) in Scott II.  Further, defendant's arguments

regarding entrapment by estoppel necessarily apply to Scott I only.  Defendant's firearms were returned to him prior to Scott I (Dkt. # 108, at 26), and thereafter at his first change of plea hearing, this Court informed defendant that he was a prohibited person and therefore was not to possess firearms.  To the extent defendant asserts either the defense of entrapment by estoppel in Scott II or that Hopkins was ineffective for failing to raise such a defense as to count two of Scott II, his argument must necessarily fail.

Except for defendant's second claim for relief, defendant's arguments all have an aspect of ineffective assistance of counsel.  To establish ineffective assistance of counsel, a defendant must show that his counsel's performance was deficient and that the deficient performance was prejudicial. Strickland, 466 U.S. at 687; Osborn v. Shillinger, 997 F.2d 1324, 1328 (10th Cir. 1993). A defendant can establish the first prong by showing that counsel performed below the level expected from a reasonably competent attorney in criminal cases.  Strickland, 466 U.S. at 687-88. There is a "strong presumption that counsel's conduct falls within the range of reasonable professional assistance."  Id. at 688.  In making this determination, a court must "judge . . . [a] counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct."  Id. at 690.  Moreover, review of counsel's performance must be highly deferential.  Id. at 689.  "[I]t is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable."  Id.

To establish the second prong, a defendant must show that counsel's deficient performance prejudiced the defendant to the extent that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  Id. at 694; see also

9

Lockhart v. Fretwell, 506 U.S. 364, 369-70 (1993).  "[T]he same two-part standard . . . [is]

applicable to ineffective-assistance claims arising out of the plea process."  Hill v. Lockhart, 474

U.S. 52, 57 (1985).  However, in the context of a guilty plea, defendant "must show that there is a

reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would

have insisted on going to trial."  Id. at 59.  The Tenth Circuit "has [ ] held that a [defendant's] 'mere

allegation' that he would have insisted on trial but for his counsel's errors, although necessary, is

ultimately insufficient to entitle him to relief."  Miller v. Champion, 262 F.3d 1066, 1072 (10th Cir.

2011) (citation omitted).  "Rather, [the court] look[s] to the factual circumstances surrounding the

plea to determine whether the [defendant] would have proceeded to trial."  Id. (citation omitted).

## A.

Defendant's first claim for relief is that he received ineffective assistance of counsel in

pleading guilty to all charges in both Scott I and Scott II.  Dkt. # 83, at 9.  Specifically defendant

argues that Greubel and Hopkins failed to "adequately advise him of any legal defenses he may have

had to the charges against him, or to investigate whether there were any facts that would support a

legal defense, [which] constituted ineffective assistant of counsel."  Id.  Defendant asserts that one

of the defenses Greubel and Hopkins should have raised is the defense of entrapment by estoppel.[4]

Id. at 10.  However, aside from overarching conclusory statements, defendant fails to specify any

other particular actions of either Greubel or Hopkins that were ineffective or constituted ineffective

---

[4]     Defendant does not specifically state in the first section of his motion that he is making such
a claim; however, defendant references "attachment A," which includes citations and
arguments regarding ineffective assistance of counsel as well as the defense of entrapment
by estoppel.  Further, defendant clearly  asserts in other sections of his § 2255 motion that
Greubel and Hopkins' failures to raise the entrapment by estoppel defense constituted
ineffective assistance of counsel.  See Dkt. # 83, at 13.

assistance of counsel.  Although a pro se litigant's pleadings are to be "construed liberally," "it is [not] the function of the district court to assume the role of advocate," and the Court will not fashion defendant's arguments for him where his allegations are merely conclusory in nature and without supporting factual bases.  Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991) ("conclusory allegations without supporting factual averments are insufficient to state a claim."); Killingsworth v. United States, 37 F.3d 1509, *1 (10th Cir. 1994) (unpublished).[5]  Insofar as defendant argues that Greubel failed to raise the defense of entrapment by estoppel, the Court will first address that argument.[6]

The Tenth Circuit has reiterated the elements of entrapment by estoppel in several cases. United States v. Nichols, 21 F.3d 1016, 1018 (10th Cir. 1994); United States v. Gutierrez-Gonzalez, 184 F.3d 1160, 1166 (10th Cir. 1999).

> The defense of entrapment by estoppel is implicated where *an agent of the government affirmatively misleads a party as to the state of the law and that party proceeds to act on the misrepresentation* so that criminal prosecution of the actor implicates due process concerns under the Fifth and Fourteenth amendments.  There must be an 'active misleading' by the government agent, and actual reliance by the defendant.  *Further, the defendant's reliance must be reasonable in light of the identity of the agent, the point of law misrepresented, and the substance of the misrepresentation.*

Gutierrez-Gonzalez, 184 F.3d at 1166 (quotation omitted) (emphasis in original); see also United States v. Scott, 41 Fed. Appx. 372, 375 (10th Cir. 2002) (unpublished).  "[C]ourts invoke the

---

[5]     This and all other unpublished decisions are not precedential, but are cited for their persuasive value.  See Fed. R. App. P. 32.1; 10th Cir. R. 32.1.

[6]     As previously noted, Hopkins was appointed to represent defendant as to sentencing only in Scott I. And, in Scott I at the change of plea hearing, defendant had been advised by this Court that he was not to possess firearms.  He was thereafter arrested, after failing to appear for sentencing on his felon in possession of a firearm conviction, in possession of a firearm. Therefore, any argument regarding entrapment by estoppel in Scott II is entirely meritless.

doctrine of estoppel against the government with great reluctance." <u>Gutierrez-Gonzalez</u>, 184 F.3d at 1166 (quotation omitted).  "It is fundamental that the United States is not estopped by representations made by an agent without authority to bind the government in a transaction." <u>Id.</u> (citations omitted).  The Tenth Circuit has found that the defense "requires that the 'government agent' be a government official or agency responsible for interpreting, administering, or enforcing the law defining the offense." <u>Id.</u> at 1167.  Thus, a statement by a state police officer or agency, even though the agency may use information provided by the federal government, cannot form the basis for asserting the entrapment by estoppel defense in a federal prosecution for felon in possession of a firearm. <u>United States v. Stults</u>, 137 Fed. Appx. 179, 184 (10th Cir. 2005) (unpublished) (entrapment by estoppel defense inapplicable to charge of felon in possession of a firearm where statements were made by state probation officer and state judge, not a federal official); <u>United States v. Hardridge</u>, 379 F.3d 1188, 1195-96 (10th Cir. 2004) (entrapment by estoppel defense inapplicable in felon in possession of a firearm case where representations were made by a state official) (citing <u>United States v. Ormsby</u>, 252 F.3d 844, 852 (6th Cir. 2001)).

In this case, defendant attached numerous exhibits to his § 2255 motion (Dkt. # 83, at 16-28), his reply (Dkt. # 108, at 16-26), and his two supplements (Dkt. ## 109, 111),[7] which defendant alleges show that the firearms were returned to him by the  Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF).  However, all of defendant's exhibits show that the Osage County Sheriff's Office retained and thereafter returned the firearms.  Dkt. # 83, at 24.  The statement of Thomas P. Harris, Senior Special Agent for the ATF states that the firearms were "retained by the Osage County Sheriffs [sic] Office under case number 2006-0418," and his statement merely records his

---

[7]        Many of the exhibits are identical.  <u>Compare</u> Dkt. # 83, at 16, <u>with</u> Dkt. # 108, at 16.

examination of the firearms. Id. at 25.  Further, in his most recent supplement to his § 2255 motion, defendant includes a letter dated July 31, 2012, which he states shows that the ATF returned the weapons, "via the Osage County Sheriff's Department."  Dkt. # 111, at 1, 3.  However, the attached letter states that "[i]f you have a felony conviction or are under supervision by the Department of Corrections you will not be allowed to take possession of any firearms listed."  And, again, the letter is clearly from the Osage County Sheriff's Office.  Id. at 3.  Finally, it appears from the record that the weapons were not returned directly to defendant, but were instead returned to defendant's attorney in an underlying state case, Brad Wicker.  Dkt. # 108, at 26.

Defendant also asserts that he was told that he could possess firearms, with the exception of handguns, by his probation officer.  Dkt. # 83, at 5, 10.  Defendant does not state whether he is referring to a state or federal probation officer.  Further, defendant fails to state when such a statement was made or to produce any other evidence to support his claim.  Although defendant would have been assigned a federal pretrial officer, such bald assertions about a statement allegedly made by a "probation" officer will not suffice to support his claim.  Thus, defendant's argument that his probation officer informed him that he could have some firearms similarly does not support a defense of entrapment by estoppel.

Additionally, prior to defendant's change of plea in Scott I, Greubel researched the defense of entrapment by estoppel, and he submitted a proposed jury instruction based upon that research. Dkt. # 26, at 2.  However, Greubel stated at defendant's change of plea hearing in Scott I that the defense would not have applied because only state agents returned the weapons to defendant, and the Court confirmed that it probably "would not have given" such an instruction.  Dkt. # 93, at 29. Greubel also stated, in an affidavit attached to the government's response, that he "prepared

13

[defendant's] case for jury trial, at [defendant's] request, on the premise that our defense would be entrapment by estoppel." Dkt. # 96-2, at 1.  Greubel elaborated that he interviewed defendant "at length" about the acquisition of the firearms, and that he "found potential witnesses who could be called to testify in support of that defense."  Id.  Further, Greubel stated that he "conducted legal research on the defense and shared the results of that research with [defendant]."  Id.  Greubel stated that he advised defendant that the defense would not be successful.  Id.[8]

To establish ineffective assistance of counsel, defendant is required to show that Greubel's performance was deficient and that the deficient performance was prejudicial. Strickland, 466 U.S. at 687.  As to the first prong, defendant must show that Greubel performed below the level expected from a reasonably competent attorney in criminal cases.  Id. at 687-88.  In this case, defendant simply alleges that Greubel should have proceeded with the entrapment by estoppel defense.  Dkt. # 83.  Defendant states that federal agents seized the firearms and subsequently returned the firearms, which "would have raised the question of whether [defendant] could assert an entrapment by estoppel defense, or any other defense."  Dkt. # 83, at 13.  Further, defendant alleges that his "attorneys made no attempt to investigate [his] background, or determine whether there were any facts available that would support any legal defenses to the charges against him."  Id.  However,

---

[8]     Again, the defense of entrapment by estoppel was entirely inapplicable to Scott II.  The government included  in its response an affidavit of Hopkins. Dkt. # 96-3.  Hopkins stated, regarding a possible entrapment by estoppel defense in Scott II, that defendant understood that, because he "had recently pled guilty to the exact same crime in Federal court and had gone AWOL for sentencing purposes," he could not successfully argue a defense of entrapment. Id.

Greubel submitted a jury instruction on such a defense (Dkt. # 26),[9] and he discussed the defense with defendant.  Dkt. # 96-2.  Therefore, the Court finds that the first prong of Strickland is not met.

Further, to establish the second prong, a defendant must show that counsel's deficient performance prejudiced defendant to the extent that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."  Hill, 474 U.S. at 59.  Greubel submitted a proposed jury instruction regarding the entrapment by estoppel defense, and he discussed the defense with the Court following defendant's change of plea.  The Court stated that it probably would not have given such an instruction.  And, defendant states only that the defense "had a reasonable probability of succeeding."  Dkt. # 83, at 13.  However, defendant

---

[9]     The supplemental proposed jury instruction was filed ex parte and under seal so as to avoid prematurely disclosing defendant's theory of the case.  Dkt. # 26, at 1.  Greubel included an explanation of the defense of entrapment by estoppel as well as an extensive list of case cites and sources.  Id. at 4.  Within the proposed jury instruction, however, Greubel noted that the government agent must be "a governmental agency responsible for interpreting, administering, or enforcing the law defining the offense, in this case, 18 U.S.C. section 922(g)."  Id. at 3.

does not allege that, but for Greubel's alleged errors, he would not have pleaded guilty and instead insisted on proceeding to trial. Therefore, the second prong of <u>Strickland</u> is not met.[10]

Although defendant does not raise the argument directly, any claim that Hopkins was ineffective for failing to raise the entrapment by estoppel defense as to Scott I on direct appeal must fail. For the same reasons that the Court found that Greubel was not ineffective for failing to raise the entrapment by estoppel defense in Scott I, Hopkins failure to raise that defense on direct appeal was also not ineffective assistance of counsel.

Finally, insofar as defendant is arguing that either attorney's representation of him was deficient in any respect, defendant fails to articulate any other arguments to support that allegation. Both Greubel and Hopkins stated, in the affidavits attached to the government's response, the lengths to which they went prior to defendant's change of plea hearings in both Scott I and Scott II, including numerous requests for continuances on defendant's behalf as well as a thorough evaluation of all options available to defendant. Dkt. ## 96-2, 96-3. Hopkins stated that he discussed the charge of felon in possession of a firearm, including the fact that defendant was caught "red-

---

[10]     The government also argues that all of defendant's claims do not meet the second prong of <u>Strickland</u>. Dkt. # 96, at 35. The government states that defendant's sentences were ordered to run concurrently, and, therefore, because defendant's claims as to Scott II must clearly fail, even if he received ineffective assistance of counsel in Scott I, he received no additional imprisonment, and thus cannot show prejudice. <u>Id.</u>  More specifically, the government asserts that, because defendant was notified by a federal judge that he was a prohibited person who could not own firearms prior to Scott II, any entrapment by estoppel defense in Scott II was without merit.  And, since defendant was sentenced to 250 months' imprisonment in both Scott I and Scott II, to run concurrently, he did not suffer any additional imprisonment and, therefore, no prejudice. Thus, all of defendant's claims simply cannot meet the second prong of <u>Strickland</u>. Although the government's analysis is correct, for purposes of clarity and in an attempt to liberally construe defendant's pleadings, the Court will address each of defendant's arguments in turn rather than dismissing them as without merit based upon this comprehensive finding.

16

handed," as well as the charge of failing to appear for sentencing, to which defendant knew that his only option was to plead guilty "with the hope of obtaining sentencing lenience and a further reduction of his sentence."  Dkt. # 96-3, at 2-3.  Hopkins further states that he met with defendant on 16 different occasions.  Id. at 5.

There is a "strong presumption that counsel's conduct falls within the range of reasonable professional assistance."  Id. at 688.  And, review of counsel's performance must be highly deferential.  See id. at 689.  The Court finds that both Hopkins and Greubel's representation of defendant fell within the range of reasonable professional assistance, and, therefore, the first prong of Strickland is not met.  Further, even if the Court were to find that defendant had established that either Greubel or Hopkins' conduct fell below the range of reasonable professional assistance, defendant does not allege that, but for any deficient performance, he would have insisted on going to trial rather than pleading guilty, so defendant's argument must fail.  Thus, the second prong of Strickland is not met, and defendant's claim that he received ineffective assistance of counsel in entering guilty pleas to all charges fails.

**B.**

Defendant's second claim is the defense of entrapment by estoppel.[11]  Defendant "asserts that the defense of entrapment by estoppel applies in [his] case."  Dkt. # 83, at 5.  Defendant contends that he was told by his probation officer and local law enforcement that he could "possess firearms

---

[11]    The Court notes that defendant also mentions ineffective assistance of counsel within his second claim by referencing the attachment to his motion. Dkt. # 83, at 13.  Defendant states that his "[c]laim for [i]neffective [a]ssistance of [c]ounsel [r]enders his waiver of rights under 28 U.S.C. [§] 2255 null and void."  Id.  However, insofar as defendant is again arguing that the failure of either Greubel or Hopkins to raise the entrapment by estoppel defense constituted ineffective assistance of counsel, that argument is analyzed above.  See supra II.A.

other than handguns." Id. Further, defendant asserts that local law enforcement seized his firearms, which were "turned over to the ATF agents," and subsequently returned to defendant "by the ATF." The government argues that defendant's waiver of appellate and post-conviction rights applies and bars defendant's claim regarding the defense of entrapment by estoppel. Dkt. # 96, at 28.

The Tenth Circuit has established a three-part test to determine if an appellate and post-conviction waiver is enforceable: "(1) whether the disputed appeal [or post-conviction proceeding] falls within the scope of the waiver of appellate [and post-conviction] rights; (2) whether the defendant knowingly and voluntarily waived his appellate [and post-conviction] rights; and (3) whether enforcing the waiver would result in a miscarriage of justice." United States v. Hahn, 359 F.3d 1315, 1325 (10th Cir. 2004) (citation omitted).

When determining the scope of an appellate or post-conviction waiver, a court must strictly construe the waiver in favor of the defendant and evaluate the scope of the waiver "in light of the defendant's reasonable understanding at the time of the guilty plea." United States v. Novosel, 481 F.3d 1288, 1291 n.1 (10th Cir. 2007).  As to the second factor, Hahn requires the consideration of two factors when a court is considering whether a defendant knowingly and voluntarily agreed to an appellate and post-conviction waiver. First, the court "examine[s] whether the language of the plea agreement states that the defendant entered the agreement knowingly and voluntarily." Hahn, 359 F.3d at 1325. Second, the guilty plea must be the result of an adequate colloquy under Fed. R. Crim. P. 11. Id. Finally, as to the third factor, a miscarriage of justice may result "[1] where the district court relied on an impermissible factor such as race, [2] where ineffective assistance of counsel in connection with the negotiation of the waiver renders the waiver invalid, [3] where the sentence exceeds the statutory maximum, or [4] where the waiver is otherwise unlawful." Id.

(quoting <u>United States v. Elliot</u>, 264 F.3d 1171, 1173 (10th Cir. 2001) (citing <u>United States v.</u>

<u>Cockerham</u>, 237 F.3d 1179, 1182 (10th Cir. 2001))).  The "otherwise unlawful" exception is focused

on the fairness of the proceedings, rather than the result of the proceedings.  <u>United States v. Smith</u>,

500 F.3d 1206, 1213 (10th Cir. 2007).  The defendant bears the burden to show that a miscarriage

of justice has occurred.  <u>United States v. Maldonado</u>, 410 F.3d 1231, 1233-34 (10th Cir. 2005).

Defendant challenges both of his guilty pleas, and, therefore, the Court will analyze the

applicability of <u>Hahn</u> to each of defendant's plea agreements.  However, the Court first notes that

defendant acknowledges that the defense of entrapment by estoppel is barred by his plea

agreements.[12]  Dkt. # 83, at 13.  As to Scott I, the first <u>Hahn</u> factor is whether defendant's claim falls

within the scope of his waiver.  Defendant's waiver states that "[t]he defendant waives the right to

collaterally attack the conviction and sentence pursuant to 28 U.S.C. § 2255, except for claims based

on ineffective assistance of counsel which challenge the validity of the guilty plea or this waiver."

Dkt. # 31, at 3.  Insofar as defendant simply claims that he is currently asserting the defense of

entrapment by estoppel, that claim is clearly covered by his waiver.  Additionally, defendant waived

his "right to confront and cross-examine witnesses against" him as well as the right to a presumption

of innocence, which would require that the government "prove the defendant guilty beyond a

reasonable doubt and by a unanimous verdict."  Dkt. # 31, at 2.  Defendant's petition to enter plea

of guilty similarly includes waiver language, including that defendant waived the right to confront

---

[12]    Defendant states that the "entrapment by estoppel defense would appear to be barred by the
terms of the plea agreements."  Dkt. # 83, at 13.  But, defendant asserts that the failure of
Greubel and Hopkins to inform defendant of the defense of entrapment by estoppel
constituted ineffective assistance and a plea agreement entered into without effective
assistance of counsel is invalid. The Court previously addressed defendant's argument that
failure to raise the entrapment by estoppel defense in either Scott I or Scott II constituted
ineffective assistance of counsel.  <u>Supra</u> Section II.A.

and cross-examine witnesses against him and to bring any pretrial motions.  Dkt. # 30, at 2.  The

parties clearly contemplated including defenses, such as the defense of entrapment by estoppel,

within the waivers included in defendant's plea agreement.

For the post-conviction waiver to be enforceable, defendant must have knowingly and

voluntarily agreed to the waiver.  Under Hahn, the initial consideration is whether the plea

agreement states that defendant knowingly and voluntarily agreed to the waiver.  The next

consideration is whether defendant's guilty plea was the result of an adequate Rule 11 colloquy.  Not

only did defendant's plea agreement state that his waiver was knowing and voluntary (Dkt. # 31, at

3), but the Court also reviewed defendant's waiver with him at length at his change of plea hearing

and confirmed that it was knowing and voluntary.  Dkt. # 92, at 12-14.  Finally, under Hahn, the

third determination is whether enforcement of the post-conviction waiver would result in a

miscarriage of justice.  Because defendant has no evidence that Greubel was ineffective in

negotiating his waiver, and he "does not challenge the lawfulness of the waiver itself, enforcing the

waiver . . . does not result in a miscarriage of justice."  United States v. Polly, 630 F.3d 991, 1001-02

(10th Cir. 2011).

The same analysis applies to defendant's guilty plea in Scott II.  His waiver stated that

"defendant waives the right to collaterally attack the conviction and sentence pursuant to 28 U.S.C.

§ 2255, except for claims based on ineffective assistance of counsel which challenge the validity of

the guilty plea or this waiver."  10-CR-87 Dkt. # 16, at 3.  As with his plea agreement in Scott I,

defendant waived his right to be presumed innocent and his "right to confront and cross-examine

witnesses against" him.  Dkt. # 16, at 2.  Defendant's petition to enter plea of guilty also contained

waiver language, similar to that included in his petition in Scott I.  10-CR-87 Dkt. # 15, at 2.  That

language clearly contemplates a waiver of the defense of entrapment by estoppel.  The Court reviewed defendant's waiver with him during his change of plea hearing.  His plea agreement stated that his waiver was "knowingly and voluntarily" made, id., and the Court so found.  10-CR-87 Dkt. # 40, at 17, 20, 32-33.  Finally, enforcing his waiver will not result in a miscarriage of justice because defendant does not contest the lawfulness of the waiver itself or that he had ineffective assistance of counsel in negotiating the waiver.  Therefore, the Court finds that, to the extent defendant is now asserting the defense of entrapment by estoppel, his waiver of appellate and post-conviction rights applies, and his claim is barred.[13]

### C.

In defendant's third claim for relief, he makes a two-pronged argument.  He alleges that Reincke engaged in improper, unethical, and illegal behavior before the grand jury, which constituted prosecutorial misconduct.  Specifically, defendant asserts that statements made by Officer Raymond Leach were contradictory and false, and that those statements were used before the grand jury.  And, secondly, defendant argues that Hopkins' failure to raise the issue of prosecutorial misconduct on direct appeal constituted ineffective assistance of counsel.

The government argues that it is unclear that Leach contradicted himself or lied such that any presentation to the grand jury would have been negatively affected. Dkt. # 96, at 41-42. Second, the government asserts that, even if Leach's statements were false or contradictory, there is no

---

[13]     Further, as previously discussed, even assuming, arguendo, that defendant's claim is not barred by either waiver, defendant's claim that the defense of entrapment by estoppel applied to either Scott I or Scott II is meritless.  As to Scott I, the firearms were returned by a state agency or official, which is not an agency responsible for interpreting or administering the federal law defendant was charged with violating.  As to Scott II, a federal district judge had advised defendant that he was not allowed to possess firearms - - any further reliance on any government actor's representation to the contrary was patently unreasonable.

evidence that Reincke used those statements in a presentation to the grand jury.  Id.  Third, the government argues that defendant has no evidence that Hopkins was ineffective for failing to raise this argument on direct appeal.  Id.  Finally, the government notes that this third claim must be relevant only to Scott I because Leach's statements were not relevant to or used in any way in Scott II.  Id.

Exhibits A through D attached to defendant's § 2255 motion are incident reports apparently completed by several officers, including Leach.  Dkt. # 83, at 16-23.  In addition, defendant has written notes on the exhibits.  Id.  Although there are some slight inconsistencies in the reports by the various officers, specifically as to when Leach learned that defendant was a convicted felon, there is no evidence that these statements were false or were used before the grand jury.  And, even if such statements were used, defendant fails to state what "improper, unethical and illegal behavior" Reincke engaged in that Hopkins should have raised on direct appeal.  Even assuming Reincke used Leach's statements before the grand jury to indict defendant, Hopkins' failure to raise that issue on direct appeal was not ineffective assistance of counsel if defendant's argument is meritless.  Here,

defendant has no evidence that Leach's statements, even if false and contradictory, were used or how such use was prosecutorial misconduct.[14]

As to the claim of ineffective assistance of counsel by Hopkins on appeal, to establish the first prong of Strickland, defendant must show that counsel performed below the level expected from a reasonably competent attorney in criminal cases.  466 U.S. at 687-88.   Because defendant has no evidence that Leach's statements were used or, if they were used, the statements were used improperly such that Hopkins should have raised the issue on direct appeal, defendant has not met the first prong of Strickland.  To establish the second prong, a defendant must show that counsel's deficient performance prejudiced the defendant to the extent that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694.  Again, defendant has no evidence to support his contention that any contradictory statements were used improperly or how such use, if raised on direct appeal, would have altered the outcome of his case.   Therefore, defendant has not met the second prong of Strickland.  Therefore, defendant's claim that Reincke engaged in improper, unethical, or illegal

---

[14]    Defendant intimates that, if he had the transcripts of the grand jury proceedings, he could show that Leach's statements were false and used to indict him.  Dkt. # 108 at 12-13. Defendant has not filed a motion for disclosure of grand jury transcripts, except a generalized motion in which he argued that all documents relating to all of his cases were sealed and requested numerous documents, including grand jury transcripts, be unsealed so that he could request those documents from the government.  Dkt. # 106.  In an order denying defendant's motion, the Court instructed defendant that all discovery requests must be submitted to the Court for approval pursuant to Rule 6 of the Federal Rules Governing Section 2255 Proceedings.  Dkt. # 107, at 1.  Further, pursuant to Fed. R. Crim. P. 6(e), the Court may authorize disclosure of a grand jury transcript in only limited circumstances, and the Tenth Circuit has stated that there is a presumption against disclosure unless the moving party meets a demanding test.  Lynde v. Rienks, 922 F2d 1448, 1451-52 (10th Cir. 1991). Where a defendant has no evidence that disclosure of the grand jury transcripts is pursuant to a "particularized need," the Court will not disturb the secrecy of grand jury proceedings. United States v. Riley, 292 Fed. Appx. 717, 722 (10th Cir. 2008) (unpublished).

conduct before the grand jury and that Hopkins' failure to raise such conduct on direct appeal constituted ineffective assistance of counsel fails.

### D.

Defendant's fourth claim for relief is that a statement made by Reincke during a Rule 11 meeting rendered his guilty plea involuntary and the result of ineffective assistance of counsel. He further alleges that privileged attorney-client information from the Rule 11 meeting was released, which violated the attorney-client privilege and his constitutional rights.[15]

The government argues that Reincke's statement did not affect the voluntariness of defendant's guilty pleas. Second, the government asserts that defendant stated, in writing, that his plea was made freely and voluntarily and that defendant failed to raise any conduct by Reincke during the change of plea hearing, which the government argues evidences that defendant's plea was not rendered involuntary by the alleged statement. Finally, the government argues that, because statements made during Rule 11 meetings are per se not privileged, and because defendant has no evidence that the "leak" of information was the fault of the government or defense counsel, defendant's argument that the "leak" of information from the Rule 11 meeting somehow renders defendant's guilty plea involuntary fails.

### 1.

Defendant's first claim is that Reincke's alleged statement resulted in defendant's guilty plea being involuntary and the result of ineffective assistance of counsel. Defendant alleges that Reincke said "I'll lock your ass up right now if you don't cooperate with me." Dkt. # 83, at 6. In Greubel's

---

[15]     Although defendant does not specify in his § 2255 motion, this argument necessarily applies only to defendant's guilty plea in Scott I.

affidavit, attached to the government's response, Greubel stated that he "does not independently recall the exact words used by Ms. Reincke, but he agrees that [defendant's] version of the statement is a close, if not exact, quotation." Dkt. # 96-2, at 2 n.1. Greubel further stated that the statement defendant attributed to Reincke occurred "at the beginning of a Rule 11 meeting held on November 2, 2009." Id. at 2. Greubel asserted that Reincke made the statement "because she had reason to believe that [defendant] was not committed to fulfilling all his obligations under the terms of the plea agreement," and Greubel states that he "had the same concerns." Id. Further, Greubel opined that Reincke "was making it clear to [defendant] that she would not support his release pending sentencing if [defendant] was not going to fulfill all of his obligations." Id. Finally, Greubel noted that Reincke thereafter "left the room after having made her statement, and the Rule 11 meeting continued for at least an hour without any further participation from her." Id.

Defendant first asserts that Reincke's statement rendered his guilty plea involuntary. However, defendant does not state why the statement he attributes to Reincke, especially standing alone, would render his subsequent guilty plea involuntary. Further, defendant failed to mention Reincke's statement, and its alleged effect, at the change of plea hearing on November 17, 2011, wherein the Court specifically questioned defendant regarding the voluntariness of his guilty plea. Dkt. # 92, at 7. Defendant confirmed that he was pleading guilty of his own free will and because he was guilty. Id. Defendant was clearly participating and attentive during the change of plea hearing. For example, defendant, in confirming he was knowingly and voluntarily waiving his appellate and post-conviction rights, asked the Court to "[h]old on" and confirmed that he correctly understood part of the waiver. Id. at 14. Presumably, if defendant had questions or concerns regarding another part of the hearing, specifically the Court's questions regarding whether his plea

was voluntary, he similarly would have felt free to consult with Greubel or to tell the Court to "[h]old on." See id. Thereafter, the Court made a specific finding that defendant's "plea of guilty [was] a knowing and voluntary plea." Id. at 24. Finally, Reincke left the Rule 11 meeting after making the statement, and defendant does not state that he thereafter raised the alleged effect of the statement to anyone in the Rule 11 meeting, especially not Greubel. Defendant has no evidence that Reincke's singular statement resulted in defendant's plea of guilty being involuntary.

Second, defendant asserts that Greubel's failure to make any statement regarding Reincke's statement, or, presumably, to raise any argument with the Court regarding Reincke's statement, resulted in Greubel's representation of defendant being ineffective. However, Greubel states, in his affidavit, that Reincke left the room, and the Rule 11 meeting continued for at least an hour without Reincke's presence. Dkt. # 96-2, at 2. There is no evidence regarding what happened during the remainder of the meeting.

Again, to establish an ineffective assistance of counsel claim, defendant must show that defense counsel performed below the level to be reasonably expected from a competent attorney and that such ineffective performance prejudiced defendant. Strickland, 466 U.S. at 687-88. As to the first prong of Strickland, because defendant has no evidence that Reincke's statements rendered his plea involuntary such that Greubel should have responded during the Rule 11 meeting or thereafter, defendant has not met the first prong of Strickland. And, as to the second prong, defendant also has no evidence that the result of the proceeding would have been different. Defendant simply states that the statements resulted in an involuntary plea of guilty, but he does not state why such statements would have had that effect. Defendant does not allege that, but for Greubel's failure, he would not have pleaded guilty and insisted on going to trial. Further, he represented to the Court

26

during his change of plea hearing that his plea was voluntary.  Therefore, defendant has not met the second prong of <u>Strickland</u>.

### 2.

Finally, defendant also argues that information from the Rule 11 meeting was released to the public, which violated attorney-client privilege and his Constitutional rights.  In support of his argument, defendant references exhibits I and J, which are actually a singular motion for downward variance filed under seal by Hopkins.  Dkt. # 84, at 2-3.  In defendant's reply, he clarifies that, because there were some assertions by the Court and the government that the release of the information was the fault of defense counsel, such a "leak" of information must necessarily mean that he received ineffective assistance of counsel.  Dkt. # 108, at 12.  The government asserts that statements made during Rule 11 meetings are <u>per</u> <u>se</u> not privileged and that defendant has no evidence regarding who leaked the statements.

"The attorney-client privilege is the oldest of the privileges for confidential communications known to the common law."  <u>Upjohn Co. v. United States</u>, 449 U.S. 383, 389 (1981); <u>United States v. Ary</u>, 518 F.3d 775, 782 (10th Cir. 2008).  "Under the common law, the privilege will only be recognized when 'the communication between the client and the attorney is made in confidence of the relationship and under circumstances from which it may reasonably be assumed that the communication will remain in confidence.'" <u>Ary</u>, 518 F.3d at 782 (quoting <u>In re Qwest Commc'n Int'l, Inc.</u>, 450 F.3d 1179, 1185 (10th Cir. 2006)).  "Because confidentiality is critical to the privilege, it will be 'lost if the client discloses the substance of an otherwise privileged communication to a third party.'" <u>Id.</u> (quoting <u>In re Qwest Commc'n Int'l, Inc.</u>, 450 F.3d at 1185).  "Where disclosure to a third party is voluntary, the privilege is waived."  <u>Id.</u> (citation omitted).

Although information from a Rule 11 meeting should not be released to the public, defendant has no evidence that such a release was the fault of any particular person, especially not Greubel or Hopkins.  Further, such information is not protected by the attorney-client privilege because third parties are clearly present, and information, if any, is voluntarily disclosed by a defendant at such a meeting.   Finally, defendant does not identify any Constitutional right that was violated by a release of such information.  Therefore, to establish an ineffective assistance of counsel claim, defendant must show that defense counsel performed below the level to be reasonably expected from a competent attorney and that such ineffective performance prejudiced defendant.  Strickland, 466 U.S. at 687-88.  As to the first prong, because defendant has no evidence that Hopkins or Greubel were responsible for the leaked information, defendant has not met the first prong of Strickland. And, as to the second prong, defendant also has no evidence that the result of the proceeding would have been different or that he would have insisted on going to trial rather than pleading guilty. Defendant simply states that the released information resulted in a violation of attorney-client privilege and a violation of his Constitutional rights.  Therefore, defendant has not met the second prong of Strickland.

### III.

Defendant also requests an evidentiary hearing on his claims. Dkt. # 83, at 8.  Defendant "is entitled to an evidentiary hearing on the issue of ineffective . . . counsel 'so long as his allegations, if true and not contravened by the existing factual record, would entitle him to habeas relief.'" Hammon v. Ward, 466 F.3d 919, 927 (10th Cir. 2006) (quoting Anderson v. Attorney Gen. of Kansas, 425 F.3d 853, 858 (10th Cir. 2005)) (citation omitted).  Because this Court has found that all of defendant's claims are without merit, defendant's request for an evidentiary hearing is denied.

## IV.

Rule 11 of the Rules Governing Section 2255 Proceedings instructs that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Pursuant to 28 U.S.C. § 2253, the court may issue a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right," and the court "indicates which specific issue or issues satisfy [that] showing." A petitioner can satisfy that standard by demonstrating that the issues raised are debatable among jurists, that a court could resolve the issues differently, or that the questions deserve further proceedings. Slack v. McDaniel, 529 U.S. 473, 483-84 (2000) (citing Barefoot v. Estelle, 463 U.S. 880, 893 (1983)). After considering the record in this case, the Court concludes that a certificate of appealability should not issue as defendant has not made a substantial showing of the denial of a constitutional right. The record is devoid of any authority suggesting that the Tenth Circuit Court of Appeals would resolve the issues in this case differently.

**IT IS THEREFORE ORDERED** that defendant's motion to vacate, set aside, or correct sentence under 28 U.S.C. § 2255 (Dkt. # 83; 10-CR-87 Dkt. # 37) is **denied**. A separate judgment is entered herewith.

**IT IS FURTHER ORDERED** that a certificate of appealability is **denied**.

**DATED** this 19th day of February, 2013.

_Claire V. Eagl_
CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE